IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THOMAS C. & PAMELA MCINTOSH                                    PLAINTIFFS

VS.                              CIVIL ACTION NO.:    1:06cv1080 LTS RHW

STATE FARM FIRE & CASUALTY COMPANY
and Forensic ANALYSIS AND ENGINEERING CORP.                   DEFENDANTS

**Plaintiffs' Memorandum in Support of Consolidated Response to Non-Party Nellie Williams' Motion for Protective Order, and Forensic Analysis & Engineering Corp.'s Motion for Protective Order, Motion In Limine to Exclude Evidence, and Motion for Sanctions Against the Scruggs Katrina Group**

Come now the Plaintiffs, by and through counsel of record, and submit this consolidate response to the various Motions filed by Forensic Analysis and Engineering Corporation ("Forensic") and Petranella Krynen Williams ("Williams"), in which they will show the following.

As a threshold matter, counsel for Plaintiffs acknowledge that a Notice of Intent regarding the subpoena duces tecum issued to Petranella Krynen Williams was not filed, and regret this error. As detailed in two attached affidavits, it is the custom and practice of counsel for the Plaintiffs to comply in every way with the Federal Rules of Civil Procedure, and the omission was an inadvertent mistake resulting from administrative and communication error. *See* Exhibits "A" and "B".

Nonetheless, a wealth of precedent establishes that the information obtained in this fashion is not forsaken, but that counsel for the Plaintiffs should acknowledge their error and stipulate to a protective order regarding any non-relevant information. Plaintiffs have followed this precedent in this instance. As outlined in the affidavits attached hereto as Exhbits A and B. Plaintiffs do acknowledge that an error was made and acknowledge responsibility for that error.

1

Moreover, established precedent will demonstrate that there is no legal basis for this Honorable Court to grant a protective order over the Williams hard drive.

## A. Background of Petranella Krynen Williams.

Petranella Krynen Williams is a sophisticated businessperson who over the years reached the level of bank vice president at an "awfully young" age,[1] owned a medical billing company for well over a decade,[2] and owned a software sales and support company that grossed "upwards of about a million dollars a year"[3] with 26 employees.[4] She is savvy with electronics[5] and set up a computer-based remote office when she worked with Forensic Analysis and Engineering Company ("Forensic").[6]

Notably, less than two months after resigning from her position with Forensic in July of 2006, she opened her own forensic engineering company in North Carolina,[7] in tacit competition with her former employer Forensic.[8] Her partner in the company is former Forensic engineer Randy Down, who had left Forensic only days before formally incorporating the corporation with her.[9]

It became clear that, as a key player in Forensic's business, Petranella Krynen Williams knew a great deal about the role Forensic played in the scheme perpetrated by State Farm to defraud victims of Hurricane Katrina. At the deposition of Williams in December of 2006,

---

[1] Deposition of Petranella Krynen Williams, at 13, in *Terri and William Mullins v. State Farm Fire and Casualty*, No. 1:06cv457LTS-RHW (S.D. Miss.), excerpted portions of which are attached as Exhibit "C" and referred to as "Williams I." The *Mullins* case has settled.
[2] Williams I at 13.
[3] Williams I at 18.
[4] Williams I at 19.
[5] Williams I at 21.
[6] Williams I at 68.
[7] Williams I at 73; *see* Articles of Incorporation of Down Forensic Engineering, Inc.
[8] Williams I at 74.
[9] Williams I at 74.

counsel for the Plaintiffs learned she had set-up a remote office separate from the Raleigh, North Carolina office of Forensic.[10] The subpoena duces tecum through which the hard drive of Williams Reno, Nevada computer was obtained was issued in response to Williams' 2006 deposition.

A core theory in the *Motion for Protective Order* filed by Forensic regarding the Williams hard drive is that this sophisticated businesswoman did not know what was on her own computer. This assertion is demonstrably false, as well as legally incorrect according to applicable precedent.

In her *Motion for Protective Order*, filed by counsel for Forensic. Williams offers that "[n]either [she] nor [Forensic] know what was on the computer, because Williams' computer crashed approximately four months prior . . . ." Mot. at 2. In the Motion, counsel for Williams further avers that "Williams did not know what information was on her computer . . . ." Mot. at 12.

Yet Williams, a technically savvy computer user who previously owned a software company, repeatedly swore under oath she **did** know what was on her computer, and that there was no information relating to her work with Forensic. Specifically, in her deposition, Williams offered sworn testimony that she "had **no information** on [her] computer in Reno," Nevada, where she lived and worked remotely.[11] Williams further offered that she "never worked on [her] computer in Reno."[12]

Rather, Williams testified that she used a "peer-to-peer" program from her home in Reno to access Forensic's computers in the North Carolina office. These programs allow a computer user to remotely access files on another computer in a separate location. Williams testified that

---

[10] Williams I at 68.
[11] Williams I at 107(emphasis added).
[12] Williams I at 107.

3

"A hundred percent of what I did while working for Forensic Engineering was done on my North Carolina computer. 100 percent."[13] She testified the computer had "crashed," apparently meaning she could no longer access the data on the computer.[14]

When specifically asked if she had turned over information from her Reno computer in response to state and federal grand jury subpoenas, Williams said that she had not, because she "had no information on [her] computer in Reno."[15] She further specifically denied that any e-mails relating to her work for Forensic would be on her Reno computer, saying that they would be "[i]n North Carolina," at Forensic's headquarters.[16]

As is evident from the multiple motions filed by Forensic, the inference is that this testimony was false. Even if the tech-savvy Williams did not know the information she had consciously processed as a part of her job with Forensic was stored on her computer, that knowledge is imputed to her because she handled the data. In one case involving child pornography, a person was charged with "exercis[ing] dominion and control" over illegal images even though the information was later deleted, as for the time "the images were displayed on [the defendant's] screen and simultaneously stored to his laptop's hard drive, he had the ability to copy, print, or email the images to others." *U.S. v. Romm*, 455 F.3d 990, 997-98 (9th Cir. 2006); *see also U.S. v. Fabiano*, 169 F.3d 1299 (10th Cir. 1999) (where a defendant was deemed to have prior knowledge of the content of images he received through e-mail). Williams is presumed to know what was on her Reno computer in that same manner.

Imputation of knowledge where there was possession, custody, or control, is a longstanding legal concept. Williams is presumed to know what was on her own hard drive

---

[13] Williams I at 107.

[14] Williams I at 108.

[15] Williams I at 107.

[16] Williams I at 108.

much as "[a]n owner is presumed to know the boundaries of his own land, the quantity of his acreage, and the amount of water available," *Snow's Auto Supply, Inc. v. Dormaier*, 696 P.2d 924, 929 (Idaho App. 1985) (internal citations and quotations omitted). Moreover, as a technically savvy person, Williams has presumed knowledge over what was on her computer, much as "an experienced businessman . . . is presumed to have read and understood the obligation he undertook." *O'Neel v. National Ass'n of Securities Dealers, Inc.*, 667 F.2d 804, 806 (9th Cir. 1982); *see also Tullis v. Kohlmeyer & Co.*, 551 F.2d 632, 634 n.4 (5th Cir. 1977) ("Plaintiffs, who are experienced businessmen, admittedly signed the NYSE membership applications which obligated them to arbitrate these disputes . . . This being the case, plaintiffs are presumed to have read and understood the obligations they thereby undertook").

Williams likewise knew of the information on her computer much as an organization "is charged with knowledge of the contents of its own records and the knowledge of its officers having a duty and authority to act in the matter is imputed to it," *Holczer v. Independent Brass City Lodge*, 133 A. 666, 667 (Conn. 1926), and as much as a reasonable person should know that "foul balls [can] go astray." *Schentzel v. Philadelphia Nat. League Club*, 96 A.2d 181, 186 (Pa. Super. 1953). There is no factual or legal argument that can establish that Williams did not know what was on her own computer, and she has offered no information that it was used without her knowledge or that she lost control of the computer, at which time relevant information was placed on her computer.

## ARGUMENT

### I. Williams' Request for a Protective Order Must Be Denied.

As an initial matter, Williams has already gained some of the relief she requested in her *Motion*, where she sought a protective order over the scope of her deposition set for October 12, 2007. As the Court is aware, the Plaintiffs previously stipulated to this issue.

As set out in Section I(A), *supra*, Williams is a well-educated and sophisticated businessperson. As required by F.R.C.P. 45 (a)(1)(D), the subpoena served on her contained the requisite explanation of her rights as stated in F.R.C.P. 45 (c) *Protection of Persons Subject to Subpoenas*. *See* Exhibit "C" The subpoena clearly notified Williams in writing under the heading "(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS" that she could, "within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials . . . or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy . . . the materials . . . except pursuant to an order of the court by which the subpoena was issued . . . ."

Accordingly, Williams knew or should have known, as would have any reasonable person, that she could take action to protect any personal information on her hard drive. Furthermore, Williams is not a stranger to the Katrina litigation against State Farm and her former employer, Forensic, or state and federal grand jury proceedings presumed to target State Farm and Forensic. She was tasked by Forensic with compiling all documentation responsive to the state grand jury subpoena served on Forensic, and she was personally served with a federal grand jury subpoena and possibly a state grand jury subpoena.

Further, the Plaintiffs have protected her personal information from disclosure by securing confidentiality agreements from the forensic computer consultants prior to the delivery of the hard drive to them.  See __Zoltain Exhibit D.  Plaintiffs secured the confidentiality agreements before they even knew what, if anything, was contained on the hard drive.

Additionally, Williams has waived her rights to now object under the subpoena duces tecum.  As noted *supra,* one of the procedural safeguards built into Rule 45 for non-parties is found in Rule 45(a)(1)(D), which specifically sets out that "[e]very subpoena shall . . . set forth the text of subdivisions (cd) and (d) of this rule."  Parts (c) and (d) describe the "Protection of Persons Subject to Subpoenas" and the "Duties in Responding to Subpoenas," respectively.

This addition of this "Rules page" is no small procedural issue; rather, it is a safeguard built into the Rule to protect those persons receiving a subpoena and to inform them of what they can and cannot do, and what they must do to comply or be relieved of the subpoena.  Accordingly, a non-party subject to a subpoena is immediately put on notice about her rights and duties when receiving the subpoena.

In *Wang v. Hsu,* the Tenth Circuit considered this issue when a non-party deponent was denied a motion for protective order after being subpoenaed pursuant to Rule 45.  919 F.2d 130, 130 (10th Cir. 1990).  The non-party "did not file an objection to inspection or copying of the documents within ten days, as required by Rule 45(d)(1)."  *Id.* at 130.[17]  The court interpreted the requirement strictly, and upheld the district court's decision to deny the protective order because the non-party "had the opportunity to object" but failed to do so.  *Id.* at 131; *See also* 28 Fed. Proc., L. Ed. *Time limitation on motions to quash or modify* § 65:257 ("a subpoenaed nonparty's untimely motion for a protective order from the subpoena will be denied"); *Ayers v. Continental*

---

[17] In 1991, Rule 45 was amended to allow 14 days after service for time of objection, as opposed to the ten days provided at the time *Wang v. Hsu* was decided.

*Cas. Co.*, 240 F.R.D. 216, 221 (N.D. W.Va. 2007) ("Motions for a protective order must be made before or on the date the discovery is due"); *U.S. v. Int'l Business Machines Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976) (a motion for protective order "must be served before the date set for production" to be timely).

In sum, "[u]nder ordinary circumstances, courts have held that where a person makes an untimely motion—one which comes after the date specified in the subpoena for compliance—the person has thereby waived any objections thereto, and has no standing to be heard." 28 Fed. Proc., L. Ed. *Time limitation on motions to quash or modify* § 65:257. The Plaintiffs therefore request that this Court follow established precedent, which weighs heavily towards finding that Williams has waived her right to now object to the subpoena.

## II. Forensic's Request for a Protective Order Must Be Denied.

### A. Forensic Does Not Have Standing To Request a Protective Order.

Under Rule 45, a nonparty may move to quash or for modification when the subpoena "requires disclosure of privileged or other protected matter and no exception or waiver applies." F.R.C.P. 45 (c)(3)(A)(iii). Forensic concedes "[t]he general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo. 1997). The only exceptions are that "[a] party also may move to quash a subpoena upon a showing that there is a privacy interest applicable," but "[a]bsent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum." *Id.*

As noted above, Forensic has not shown in any way that there is a privilege over specific documents. Indeed, as set out repeatedly, Forensic **cannot** do so without acknowledging that its discovery responses were knowingly false, that it has misrepresented the truth to counsel for the

Plaintiffs in multiple communications, and that its agent and employee Petranella Krynen Williams repeatedly perjured herself under oath.

Instead, Forensic retreats to platitudes and distortion, again stating that "[i]t appears that, under the circumstances, the manner in which the subpoena was issued to Williams suggests a calculated effort to hinder, if not circumvent, [Forensic's] ability to oppose the collection/production of data and information . . . ." Forensic's Memo at 5. As set out at length above, the Plaintiffs relied upon the three central representations of Forensic in issuing the subpoena, all of which repeatedly emphasized that the hard drive was free of any Forensic information.

**B. Forensic's Failure to Submit a Privilege Log Waives Any Such Privilege.**

In Forensic's Motion for Protective Order, it conclusorily states that there are multiple instances of "privileged information" on the hard drive. Yet Forensic fails to identify even one iota of the supposed privileged information.

The Federal Rules require that "[w]hen information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and *shall be supported* by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." F.R.C.P. 45 (d)(2)(A) (emphasis added). Forensic's failure to submit a privilege log therefore destroys its motion.

Simply put, "[a] party that fails to submit a privilege log is deemed to waive the underlying privilege claim." *In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001). Indeed, the issue is not even ripe for discussion, as "*[b]efore* a court turns to the question of privilege, the subpoenaed party must comply with the requirements of Fed.R.Civ.P. 45(d)(2) . . .

." *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 195 (D.D.C. 2003) (emphasis added). This is because "[t]he rule is obviously mandatory." *Id.*; *see also In re Grand Jury Subpoena*, at 575 ("The operative language [in Rule 45] is mandatory"). While "infinitely detailed information" is not required in crafting a privilege log, "a party who asserts a claim of privilege to do the best that he reasonably can to describe the materials to which his claim adheres." *Id.* at 576.

As the First Circuit phrased it, the failure of Forensic to produce a privilege log "is fatal," as the general approach of courts is "specify or waive." *Id.* at 576 (internal quotations omitted); *see Colkitt*, 216 F.R.D. at 195 ("Failure to comply with [the Rule] 'is deemed to waive the underlying privilege claim'") (*quoting In re Grand Jury Subpoena*); 9A Wright & Miller, *Federal Practice and Procedure* § 2458 ("Whoever asserts privilege has a burden of proof when information subject to a subpoena is withheld on a claim of privilege . . . Courts consistently have held that such a party is required to produce a document index or privilege log, and that the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege claim"); *R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 Fed.Appx. 880, 882 (3rd Cir. 2002) (party asserting privilege "has the burden of establishing that its documents are privileged") (*citing* Wright & Miller); *see also Bregman v. District of Columbia*, 182 F.R.D. 352, 363 (D.D.C. 1998) (in the Rule 26 context, a "plaintiff's failure to . . . file a privilege log, bars in itself any claim of privilege, whatever its basis").

Accordingly, because it failed to comply with the mandatory language of the Rule, Forensic's Motion should be denied.

**C.  Forensic's Was Not Offered the Williams Hard Drive "For a Price."**

Forensic's and Williams' suggest that the letter from counsel for the Plaintiffs regarding the cost of providing the data to all parties constituted selling the Williams hard drive "for a price." Yet Plaintiffs' counsel spent in excess of $5,000.00 to have the hard drive forensically examined, and as cited in that letter, the traditional rule holds that the producing party of electronic evidence must obtain, translate and bear the costs associated with the production of such evidence. *See e.g., Zubulake v. UBS Warburg*, 217 F.R.D. 309 (S.D.N.Y. 2003), (revising the *Rowe* eight factor test set forth in *Rowe Entertainment, Inc. vs. The William Morris Agency*, 205 F.R.D. 421 (S.D.N.Y. 2002)); see also *Multitechnology Services LP vs. Verizon Southwest*, 2004 WL 1553480 (N.D. TX).

Given that the electronic information in question here was obtained by a subpoena served on a non-party, there was a serious issue about costs allocation for obtaining and having to forensically examine the data. Rather than attempt to shift some or all of the in excess of $5,000.00 in costs to a third-party witness, the most conservative approach at the time was to request each party to pay the nominal fee associated for an external hard drive device to load the data onto to, and a pro-rata share of the nominal costs of downloading the data by the party having chain-of-custody of the electronic information. The Plaintiffs furthered offered suggestions as to alternatives for costs sharing and cited current case law to reference in the event a party wished to open the issue for further debate.

Despite defense counsel's ethical and legal obligation to reasonably investigate documents and information in their clients' custody, possession and control in responding to discovery, their adamant representations that everything related to Forensic's Katrina work has been produced to Plaintiffs, Williams and Forensic's claimed ignorance of the hard drive contents, Williams' sworn testimony in December of 2006 in Mr. Canada's presence that her

hard drive contained no Forensic-related documents and had crashed, her sworn testimony in Mr.
Canada's presence that the 5 computer discs produced that day had previously been given to Mr.
Canada and to criminal investigative authorities, and Forensic's failure to provide a privilege log
of any Forensic documents, Forensic and Williams' attorneys now claim that "[t]here is no doubt
that Williams' computer contained privileged information which Plaintiffs' counsel knew or had
reason to know would not be waived by Forensic". Memo at 3. If there is "no doubt" that
Williams' computer contained privileged information, then it was and is incumbent on Forensic
to produce a privilege log for all such documents. Despite their claim that there is privileged
data on the Williams hard drive, Forensic's failure to produce a privilege log demands the
dismissal of its motion.

### III. The Three Remedies: Access to the Hard Drive, *In Camera* Review by the Court, and Protective Order for Personal Information.

Forensic and Williams both seek the return of the Williams hard drive. The proper
remedy is that they receive access to the information collected in this fashion, i.e., arranged on
this particular hard drive, despite the fact that the Williams hard drive was obtained from their
agent and employee and the data on the Williams hard drive, despite the protests in the motions
at hand, is from Forensic. Other remedies available are a protective order over Williams'
personal information and *in camera* review by the Court.

### A. Precedent Establishes that Access to the Hard Drive Remedies the Lack of Notice.

It is hornbook law that "[a]bsent such notice [prior to a serving a subpoena duces tecum],
the party complaining of prejudice due to the lack of notice may be entitled to a variety of
remedies," notably "access to the material provided in response to the subpoena at issue." 28
Fed. Proc., L. Ed. *Prior notice of subpoena duces tecum* § 65:247. In the Ninth Circuit case of *In*

12

*re Letters Rogatory from Tokyo District. Prosecutor's Office, Tokyo, Japan*, the court worked to fashion a remedy when a subpoena duces tecum was served without notice on the opposing party and "notice requirements were violated." 16 F.3d 1016, 1020 (9th Cir. 1994).

The Court worked to "fashion an equitable remedy," and ultimately ruled that the "remedy is a district court order directing the commissioners to provide copies of all witness statements—including affidavits, interviews, and depositions—and all documentary and physical evidence collected and still in the commissioners' possession." *Id.* at 1021. In other words, the proper remedy for the lack of notice was to provide access to the information to the other party. *See also ATSI Comm., Inc. v. The Shaar Fund, Ltd.*, 2003 WL 1877227, *3 (S.D.N.Y. April 9, 2003) (where there was no notice prior to obtaining information via subpoena duces tecum, counsel was directed to "make complete disclosure to defendants . . . of all materials obtained by them through the service of subpoenas . . . includ[ing] copies of all . . . materials produced pursuant thereto").

That is exactly the remedy the Court should reach in this instance. Providing Forensic with access to the information provides an equitable balance between the parties and eliminates any prejudice the lack of notice caused. **The Plaintiffs stipulate** that they will provide a copy of the Williams hard drive **to all parties** in order to best cure this situation.

### B. A Protective Order Will Cure Any Personal Prejudice to Williams.

Although it is not fully clear from her motions, it appears that Williams seeks a protective order over her personal information. **The Plaintiffs stipulate** to a protective order that prevents the disclosure of any personal information related to Petranella Krynen Williams that is not related to the substance of the case at hand, or the claims or causes of actions of the Plaintiffs.

13

Frankly, the personal information of Williams is irrelevant to this case and the Plaintiffs do not wish to cause her personal embarassment or utilize any personal information in any way.

### C. *In Camera* **Review by the Court is Available.**

Despite the Plaintiffs' contention that Forensic has waived any claim of privilege due to unclean hands, the failure to timely assert, and by failing to disclose a responsive privilege log to discovery requests, the Court still has the option of requiring the Plaintiffs to submit a copy of the Williams hard drive.

The Court could then require Forensic to compile a privilege log and then review the documents as per well-settled Mississippi law. *See Hewes v. Langston*, 853 So.2d 1237, 1250 (Miss. 2003) ("when objections to discovery of specific documents are made, the trial court should deal with each on an item-by-item basis, carefully considering each objection, deciding whether to allow discovery, and stating the rule or exception which provides the basis for the decision"). Until such time, the assertions of privilege by Forensic are utterly without basis.

### D. **There is no prejudice to any party.**

The equitable remedies of access to the information, in camera review, and protective order for personal information are further underscored by the fact that there is no prejudice to Forensic or Williams regarding the hard drive. "[T]he omission of the notice is harmless if it is clear that a party without notice is not prejudiced by the nonparty's compliance with the subpoena." 28 Fed. Proc., L. Ed. *Prior notice of subpoena duces tecum* § 65:247. As has been amply demonstrated above, this is information of which Forensic knew and had in their possesion and control, and which was archived by their agent and employee Williams. Logic and common sense dictate that there can be no prejudice when the information was already in the possession and control of Forensic.

Further, and contrary to the facts and ruling in *Allender v. Raytheon, supra*, on which both Williams and Forensic rely, the Plaintiffs did not issue the subpoena at hand for an improper purpose. In *Allender*, the defense attorneys who issued the subpoena at issue were on notice of the plaintiff's objections to discovery of her medical records by virtue of their participation in the informal Rule 26 planning meeting prior to the scheduling conference with the Court and by inclusion of the plaintiff's objections as an issue in the parties' planning report to the Court.

In this case, the Plaintiffs had no knowledge of any objection by Williams or Forensic to discovery of the hard drive.

In fact, Mr. Canada, counsel for Forensic since at least May of 2006, and counsel for Williams since October 3, 2007, was present at Williams' December 14, 2006, deposition during which she repeatedly and adamantly denied that any Forensic-related documents were on her home computer, and swore under oath that her computer had "crashed" a few months prior to her deposition. In light of her sworn contention that nothing was on her hard drive and that her computer had crashed, Plaintiffs had no notice of the likelihood that Williams or Forensic would object.

E.    This Court Lacks Jurisdiction Over this Matter

As a final matter, Plaintiffs point out that this Court does not have jurisdiction over this matter. The subpoena at issue was issued out of the federal court in Reno, Nevada, and it is that court which has jurisdiction to hear this matter. This Court has already declined to hear a matter arising out of a subpoena in this case issued out of an Illinois court, and the same should be done here.

## Conclusion

In light of the ample facts and case law recited above, the Plaintiffs respectfully request that this Honorable Court *deny* the motions by Forensic and Williams for protective orders, and fashion an equitable remedy which provides access to the Williams hard drive for all parties, as well as other equitable relief described above.

Respectfully submitted this the 19th day of October, 2007.

**THOMAS C. MCINTOSH and
PAMELA MCINTOSH**

By:    *s/Marshall H. Smith*
MARSHALL H. SMITH
Attorney for Plaintiffs

**OF COUNSEL:**

Mary E. McAlister (MSB No. 2170)
Derek A. Wyatt (MSB No. 7413)
David Neil McCarty (MSB No. 101620)
Nutt & McAlister, P.L.L.C.
605 Crescent Boulevard, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 898-7302
Facsimile: (601) 898-7304

Richard F. Scruggs (MSB No. 6582)
Sidney A. Backstrom (MSB No. 99890)
David Zach Scruggs (MSB No. 100011)
Scruggs Law Firm, P. A.
Post Office Box 1136
Oxford, MS 38655
Telephone: (662) 281-1212
Facsimile: (662) 281-1312

Don John W. Barrett (MS Bar No. 2063)
Marshall H. Smith, Jr. (MSB No. 99239)
David Malcolm McMullan, Jr.
Barrett Law Offices
Post Office Box 987
Lexington, MS 39095
Telephone: (662) 834-2376
Facsimile: (662) 834-2628

Dewitt M. Lovelace (MSB No. 1449)
Lovelace Law Firm, P.A.
36474 Emerald Coast Parkway, Suite 4202
Destin, FL 32541
Telephone: (850) 837-6020
Facsimile: (850) 837-4093

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2007, I served the foregoing, via Court's ECF

system, to the following United States District Court, Southern District of Mississippi, Southern

Division ECF system participants in this case:

Riehard F. Scruggs
dickscruggs@scruggsfirm.com            bethjones@scruggsfirm.com
lindahollowell@scruggsfirm.com         sbackstrom@scruggsfirm.com

Sidney A. Backstrom
sidbackstrom@scruggsfirm.com           bethjones@scruggsfirm.com
charlenebosarge@scruggsfirm.com        humpmcgee@scruggsfirm.com
lindahollowell@scruggsfirm.com

David Zach Scruggs
zachscruggs@scruggsfirm.com            bethjones@scruggsfirm.com
charlenebosarge@scruggsfirm.com        chrisrobertson@scruggsfirm.com
humpmcgee@scruggsfirm.com              jennifercarr@scruggsfirm.com
katierichcreek@scruggsfirm.com         lindahollowell@scruggsfirm.com
sbackstrom@scruggsfirm.com

Benjamin H. McGee, III
humpmcgee@scruggsfirm.com

Christopher T. Robertson

chrisrobertson@scruggsfirm.com          lindahollowell@scruggsfirm.com

Don John W. Barrett
dbarrett@barrettlawoffice.com

Marshall H. Smith, Jr.
mhsmithjr@barrettlawoffice.com          dmcmullan@barrettlawoffice.com
rrbarrett@barrettlawoffice.com

Dewitt M. Lovelace
dml@lovelacelaw.com

Michael C. Moore
mm@mikemoorelawfirm.com

### COUNSEL FOR **PLAINTIFFS**

Amy K. Averill – PHV
amy.averill@sablaw.com

Harry Benjamin Mullen
ben@bnscb.com                           lawshark66@i-55.com
layna@bnscb.com

John W. Bonds – PHV
john.bonds@sablaw.com

Thomas M. Byrne – PHV
tom.byrne@sablaw.com                    jennifer.wagner@sablaw.com

Valerie Sanders – PHV
valerie.sanders@sablaw.com

Dan W. Webb
dwebb@webbsanders.com                   adt@webbsanders.com
amy@webbsanders.com                     ceh@webbsanders.com
jsr@webbsanders.com                     kbw@webbsanders.com
lfc@webbsanders.com                     lma@webbsanders.com
mks@webbsanders.com                     rrm@webbsanders.com
sew@webbsanders.com                     smf@webbsanders.com
sns@webbsanders.com

Matthew E. Perkins
perkins@bnscb.com                       layna@bnscb.com
perkins.bnscb@gmail.com

Roechelle R. Morgan
RRM@webbsanders.com                   jsr@webbsanders.com
lma@webbsanders.com                   mks@webbsanders.com
sew@webbsanders.com                   smf@webbsanders.com
sns@webbsanders.com                   tsp@webbsanders.com

Norma Carr Ruff
ncr@webbsanders.com                   csb@webbsanders.com
lma@webbsanders.com
sew@webbsanders.com

### COUNSEL FOR *STATE FARM FIRE & CASUALTY COMPANY*

John A. Banahan
john@bnscb.com

### COUNSEL FOR *STATE FARM FIRE & CASUALTY COMPANY* and *STATE FARM BANK*

Larry G. Canada
lcanada@gjtbs.com                     msoleto@gjtbs.com

### COUNSEL FOR *Forensic ANALYSIS & ENGINEERING CORP.*

Kathryn Breard Platt
kbreard@gjtbs.com

### COUNSEL FOR *Forensic ANALYSIS & ENGINEERING CORP.* and *MOVANT/INTERESTED PARTY* *NELLIE WILLIAMS*

Christine Lipsey – PHV
clipsey@mcglinchey.com                jmatthews@mcglinchey.com
jrobert@mcglinchey.com

H. Hunter Twiford, III
htwiford@mcglinchey.com               jrouse@mcglinchey.com
kcallais@mcglinchey.com               mmason@mcglinchey.com
wsims@mcglinchey.com

David Aaron Norris
dnorris@mcglinchey.com                vbarr@mcglinchey.com
vmcqueen@mcglinchey.com

### COUNSEL FOR *E. A. RENFROE & COMPANY, INC.*

Luke Dove

ldove81743@aol.com                    bethbailey1@aol.com

Drew McLemore Martin
drewmartinlaw@gmail.com

    *COUNSEL FOR INTERESTED PARTY **MARK DRAIN***

William E. Whitfield, III
whitbill@bryantdukes.com              whitbill@aol.com

    *COUNSEL FOR INTERESTED PARTY **PETER H. BARRETT***

Grady E. Tollison, Jr.
grady@tollisonlaw.com                 becky@tollisonlaw.com

    *COUNSEL FOR INTERESTED PARTY **JOHN JONES** and **DAVID STANOVICH***

George S. Shaddock
georgeshaddock@yahoo.com              mls.lawfirm@yahoo.com

Harlan F. Winn, III
hwinn@bfgwc.com                       arodgers@bfgwc.com
lspice@bfgwc.com

Michael R. Smith – PHV
msmith@zuckerman.com                  khillian@zuckerman.com

Robert E. Battle – PHV
rbattle@bfgwc.com                     arodgers@bfgwc.com
lspice@bfgwc.com

    *COUNSEL FOR MOVANT/INTERESTED PARTY **CORI RIGSBY** and **KERRI RIGSBY***

James P. Streetman, III
jstreetman@sssf-ms.com

Matthew A. Taylor
mtaylor@sssf-ms.com                   sscarborough@sssf-ms.com

    *COUNSEL FOR MOVANT/INTERESTED PARTY **DAVID L. HARRELL WITH THE DEPARTMENT OF INSURANCE***

Joseph M. Hollomon
jhollomon@att.net                     joehollomonlaw@yahoo.com

*COUNSEL FOR MOVANT/INTERESTED PARTY **LECKY KING** and **LISA WACHTER***

James R. Robie – PHV
jrobie@romalaw.com                        aweiglein@romalaw.com
bdanziger@romalaw.com                     dweinman@romalaw.com
jnittel@romalaw.com

*COUNSEL FOR INTERESTED PARTY **TAMARRA RENNICK***

And I hereby certify that I have delivered the foregoing document to the following non-ECF participant, via email:

Christopher T. Conte
ctc@helmsinglaw.com

*COUNSEL FOR INTERESTED PARTY **DAVID RANDEL***

This the _____ day of _____, 2007.

By:    *s/Marshall H. Smith*_____
MARSHALL H. SMITH (MS Bar No. _____)
Attorney for Plaintiffs