UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**THOMAS C. and PAMELA McINTOSH**                                    **PLAINTIFFS**

**V.**                                    **CIVIL ACTION NO.1:06CV1080 LTS-RHW**

**STATE FARM FIRE and CASUALTY COMPANY, and**
**FORENSIC ANALYSIS & ENGINEERING CO., and**
**E. A. RENFROE & COMPANY, INC.**                                    **DEFENDANTS**

### MEMORANDUM OPINION ON MOTION TO DISQUALIFY MEMBERS OF THE KATRINA LITIGATION GROUP AND ASSOCIATED COUNSEL

The Court has before it the second motion [966] of State Farm Fire and Casualty Company (State Farm) and the motion [978] of E. A. Renfroe & Company (Renfroe) to disqualify the attorneys and law firms of the former Scruggs Katrina Group (SKG) and the associated firm of Hesse & Butterworth P.L.L.C. (and other attorneys associated as counsel for the plaintiffs by these firms) from representing the plaintiffs in this action. For the reasons set out below, these motions will be granted.

The SKG Joint Venture was formed to litigate property damage claims following Hurricane Katrina. This action was filed by the original members of the SKG. The motions [890] [891] of Richard Scruggs (Scruggs) and the other attorneys of the Scruggs Law Firm, P. A., to withdraw as counsel in this case have been granted. The motion [1079] of Mike Moore of the Mike Moore Law Firm, L.L.C., to withdraw as counsel has also been granted. The other members of the SKG joint venture, the Barrett Law Office, P.A. (Barrett); Nutt & McAlister, P.L.L.C. (Nutt); and the Lovelace Law Firm, P.A. (Lovelace), remain as counsel of record. These remaining joint venturers have associated Hesse & Butterworth, P.L.L.C. as counsel for the plaintiffs.

When Scruggs and two other members of the Scruggs Law Firm withdrew as counsel of record in this case, Barrett, Nutt, and Lovelace regrouped and formed the Katrina Litigation Group (KLG). The members of the KLG have undertaken to represent the plaintiffs in this case and in a large number of other cases against State Farm and Renfroe now pending in this Court.

State Farm and Renfroe have moved to disqualify the members of the KLG on the grounds that Scruggs, acting on behalf of the SKG, engaged in unethical conduct that is sufficiently egregious to justify disqualification of the other SKG joint venturers in order to preserve the integrity of the judicial process and to assure public confidence in the litigation of this case and the other similar cases now pending in this Court.

State Farm and Renfroe have charged Scruggs with two basic types of ethical misconduct and with conflicts of interest, all of which relate in one way or another to the relationship between Scruggs and the SKG and two former Renfroe employees Cori and Kerri Rigsby (the Rigsby sisters).  State Farm and Renfroe allege 1) that Scruggs participated and encouraged the Rigsby sisters to wrongfully appropriate and disclose confidential documents in which both State Farm and Renfroe had a legitimate right to confidentiality; and 2) that Scruggs paid the Rigsby sisters a substantial sum in furtherance of Scruggs's efforts to encourage the misappropriation of these documents.  State Farm and Renfroe have alleged additional acts of misconduct relating to other witnesses and to the plaintiffs' counsel having obtained documentary and physical evidence without following the established procedure for the use of out-of-state subpoenas in the discovery process.

I have determined that disqualification is required because Scruggs, acting in furtherance of the SKG joint venture, paid the Rigsby sisters a substantial sum of money (a consulting fee of $150,000 per year) despite Scruggs's knowledge that the Rigsby sisters were material witnesses in connection with many hurricane damage claims that were likely to become the subject of litigation.  While Scruggs made the arrangements for these payments, the other members of the SKG joint venture knew or should have known that the payments were being made, and I am of the opinion that their failure to take timely and reasonable remedial steps or to object to this arrangement amounts to a ratification of Scruggs's actions.  While the other ethical misconduct alleged by State Farm and Renfroe are substantial, the payments to the Rigsby sisters are, in and of themselves, sufficient to warrant disqualification.

It is apparent to me, from my review of the deposition testimony of the Rigsby sisters, that there was no legitimate reason for these payments and that the "consulting" work that ostensibly justified these payments was a sham.  Even if this were not the case, the performance of legitimate work that is closely related to a matter in litigation cannot justify an attorney's payment of a substantial sum of money to a non-expert material witness.  Payments to non-expert witnesses are specifically limited to statutory witness fees; reasonable expenses actually incurred for mileage, meals, and lodging; and reasonable compensation for time lost from work while attending a trial or testifying by deposition. (Opinion No. 145 of the Mississippi State Bar Ethics Committee, March 11, 1988).  The payments Scruggs made to the Rigsby sisters bears no reasonable connection to any work they performed or to any of expenses they incurred in testifying.  These payments were clearly improper.  *N.L.R.B. v. Thermon Heat Tracing Services, Inc.*, 143 F.3d 181 (5th Cir.1998); *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n,* 865 F.Supp 1516, 1526 (S.D.Fla.1994); *Rentclub, Inc. v. Transamerica Rental Fin. Corp.*, 811 F.Supp 651, 653 (M.D.Fla.1992), *aff'd* 43 F.3d 1439 (11th Cir.1995); *Wagner v. Lehman Bros. Kuhn Loeb Inc.*, 646 F.Supp 643 (N.D.Ill.1986).

Even though the payments to the Rigsby sisters originated with Scruggs, the other members of the joint venture were aware or should have been aware that the payments were being made and did nothing to prevent their continued payment.  In these circumstances, all of the other members of the original SKG are responsible for this breach of ethics.  Those whom these firms have subsequently associated must also be disqualified to prevent the appearance of impropriety in the remainder of this litigation.  *See* MRPC 5.1(c) ("A lawyer shall be responsible for another lawyer's violation of the rules of professional conduct if: (1) the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved . . . or . . . knows of the conduct at the time when its consequences can be avoided or mitigated but fails to take reasonable remedial action."); *See American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128-29 (5th Cir.1971).

The payments made to the Rigsby sisters require the disqualification of the successors to the SKG and those whom they have added as associates from further participation in any litigation in this Court against State Farm and Renfroe arising from property damage attributable to Hurricane Katrina.  The motions to disqualify will be granted.  An appropriate order will be entered, and the plaintiffs in all cases affected by this disqualification shall be allowed a period of forty-five days in which to retain new counsel or to notify the Court of their intention to proceed pro-se. For good cause, this period may be enlarged at the discretion of the United States Magistrate Judge assigned to the case.  The plaintiff's failure to retain new counsel or to inform the court of the intention to proceed pro-se will make a case subject to this order eligible for dismissal without prejudice.  The attorneys subject to disqualification by the terms of this order shall send, via United States mail, postage prepaid, a copy of the opinion and order in this case to each client affected by this ruling.

The Rigsby sisters will be disqualified as witnesses in any actions now pending on this Court's docket against State Farm or Renfroe in which the SKG or the KLG has represented the plaintiffs, and any documents supplied by the Rigsby sisters to the SKG or the KLG or its associates shall also be excluded from evidence unless the plaintiffs can show that the documents were obtained through ordinary methods of discovery.

**DECIDED** this 4th day of April, 2008.

                                                                s/ L. T. Senter, Jr.
                                                                L. T. SENTER, JR.
                                                                SENIOR JUDGE